lar." This provision allows a fee of one dollar for making an order, and for certifying a copy of the same to the clerk, in a case where previous notice is required to be given to an adverse party of the application for the making of the order before the order can be made. That this is the meaning of that provision of rule 30 of the general orders, is shown by the language of rule 8 of the general orders. In the present case, no notice was required to be given to any party of the application for the order for the examination of the bankrupt before the order could be made. By the 26th section of the act, it is provided that the court may, at all times, require the bankrupt upon reasonable notice to attend and submit to an examination on oath, upon all matters relating to the disposal or condition of his property, &c. An order requiring the bankrupt so to attend and be examined, and service of such order on him a reasonable length of time previously, are necessary, and the form of such order is prescribed by form No. 45, of the form specified in the schedule annexed to the general orders in bankruptcy. But no previous notice is required to be given to any person of the application to the register by the creditor for the making of the order. It is to be made ex parte on the application of the creditor. It may also, under section 26 of the act, be made by the register ex parte on the application of the assignee, or by the register on his own suggestion without any application. The register was, therefore, not entitled to charge any fee for making the order in this case. There are many specific services which must be rendered by the registers, and for which no specific fee is provided either by the act or the general orders in bankruptcy. Their compensation for such service is covered by the specific fees which are enumerated in the act and the general orders. Thus the register receives two dollars for issuing a warrant, but no specific fee is provided for the adjudication of bankruptcy, form No. 5, which the register must make before he can issue the warrant. He receives compensation for making the adjudication in the fee of two dollars, which he receives for issuing the warrant. That fee of two dollars is a fee for doing everything, (a fee for which is not otherwise specially provided,) which results in the issuing of the warrant, and no specific fee is provided for the service of examining the bankrupt's petition and schedules, when such examination results in the withholding of the adjudication of bankruptcy. So also the fee of three dollars to the register for an order for a dividend, covers all his services not otherwise provided for, which result in the making of the order for the dividend; and the fee of two dollars to the register for every discharge, when there is no opposition, covers all his services not otherwise provided for, which result in the granting of the discharge. The making of the order in ·this case for the examination of the bankrupt, not having any fee specially attached to it, must be considered as compensated by some one or more of the fees which are enumerated.

The fee of one dollar for the order cannot be considered as authorized by the provision of the 47th section, which gives a fee of one dollar for "every application for any meeting in any matter" under the act. The word "meeting," wherever used in the 47th section and elsewhere in the act, means a meeting of creditors, such as is spoken of in the 12th, 27th, and 28th sections. The application by the creditor for the order for the examination of the bankrupt, cannot be regarded as an application for a meeting of creditors.

As the register was bound to make the order asked for, without requiring the payment by the creditor or any other person of any specific fee for such order, this decision might properly go no further than to dispose of that point. But in view of the positions urged by the counsel for the creditor, it is deemed proper to lay down some propositions which are applicable to this case, and which have been carefully considered: (1) Where a creditor applies under section 26 of the act, for an order for the examination of the bankrupt, the creditor must pay the register the fees allowed by law for taking the deposition of the bankrupt, not only for his direct examination but for his cross examination, if any, and the register is not required to look in the first instance for such fees to the bankrupt, or to the fifty dollars deposited by him or to the bankrupt's estate. (2) Whether such fees shall ultimately be paid out of the estate, will be a question for consideration hereafter.

The clerk will make a certificate of this decision to the register, Edgar Ketchum, Esq.

McKNIGHT (GILLESPIE v.). See Case No. 5,435.

## Case No. 8,867a.

### McKNIGHT v. McKNIGHT et al.

[2 Hayw. & H. 132.][1]

Circuit Court, District of California. Oct. 26, 1853.

GUARDIAN AND WARD — PROPERTY OF WARD—
    SEIZIN—HUSBAND AND WIFE—ACTION BY
        WIFE—JOINDER OF HUSBAND.

1. The control of a guardian of the real estate of his ward constitutes a sufficient entry to invest the ward with actual seizin; and on the marriage of the ward the authority of the guardian ceases, so far as the right of the ward is concerned.

2. A wife, unless she be entitled to a sole and separate estate, can bring no suit without the

---

[1] [Reported by John A. Hayward, Esq., and Geo. C. Hazleton, Esq.]

union of her husband in relation to her property or interests, either real or personal, legal or equitable.

In equity. The complainant [Ann E. McKnight] states that she is a daughter and one of the heirs at law of Anthony Preston, deceased, who died intestate, seized of considerable real estate, leaving a widow and five other children besides the complainant. That she married James M. McKnight while under the age of 21 years, and the ward of Jacob Gideon. That upon the treaty of said marriage it was especially agreed and stipulated between her intended husband and her guardian that the estate of the complainant should be settled upon her and her heirs, free from any control of her intended husband, and from all liabilities for his debts. That her husband has not entered in fact upon any portion of said estate, nor received the rents and profits, nor seized in her right of her undivided interest therein; nor hath she made entry therein. That certain creditors of her husband have levied a fieri facias upon a life interest in her estate, who are made defendants in this suit. That without such ante-nuptial agreement the title of her husband as tenant by the courtesy, has not accrued, by reason of there having been no entry by her or him upon any part of the premises, but that the whole of said estate has remained awaiting partition and subject to dower. The prayer of the claimant was, that a decree be passed for the purpose of carrying into effect the ante-nuptial agreement, and that her husband be decreed to have no estate or interest in the premises, and that the creditors be enjoined from further proceedings, &c.

The defendants [James M. McKnight, James M. Small, John F. Dyer, Esau Pickerell, John F. Pickerell, William McVeigh, and James H. McVeigh] answering, admitted the facts as stated in the bill. That the husband of the complainant had issue by her born alive, and was entitled as tenant by the courtesy inchoate (his wife being still alive) to a life interest in one undivided fifth part, subject to the widow's dower in the whole. That if any ante-nuptial contract was made it never was reduced to writing, and is therefore null and void, so far as the defendants are concerned. That in point of law, the possession of the joint coparceners, and the reception of the rents and profits of the guardian, is equivalent to a reception thereof by the infant coparceners, and that the complainant, as one of the coparceners, has had an actual legal seizin of said estate. That the pendency of the partition proceedings cannot affect their right to enforce their judgments.

Sam'l Chitten, for defendants, says the grounds alleged in the bill for equitable interposition on behalf of the complainant are: First, An ante-nuptial agreement in contemplation and consideration of the intended marriage between the complainant and James M. McKnight, made between said James M. McKnight and said Jacob Gideon, the guardian of the complainant, to settle all the property of the complainant to her sole and separate use. Secondly, That the husband, James M. McKnight, has never had seizin of his wife's interest in the legal estate in question. It is conceded that no settlement has ever been made. An agreement to settle is all that is relied upon for the complainant. Whether such agreement, if it ever had existence at all, was in writing or by parol, the allegations of the bill furnish no information; but as no written agreement is produced, and its non-production is wholly unaccounted for, we are warranted in assuming that if any agreement was in point made it was by parol. It is not proved that any agreement at all was written or parol was made. The only evidence touching this question is found in the deposition of Mrs. McKnight, the mother of the husband, and Mrs. Preston, the mother of the complainant. The affidavit of Mr. Gideon to the allegations of the bill is not evidence (certainly not upon a final hearing). The testimony of the two mothers apart from all bias, is altogether too loose and indefinite to establish the fact of the existence of any agreement at all, and if deemed by the court sufficient to establish the existence of an agreement, is yet so loose that it is impossible for the court to give effect to it by decree. But we insist that an ante-nuptial parol marriage agreement, even if a post-nuptial settlement, in pursuance of its terms, and reciting the fact of such agreement, be executed, and that too before the lien of the creditor attaches by judgment or execution, is yet void as to the creditor of the husband, whose debt has existence before the execution of the settlement. See 1 Story, Eq. Jur. 366, 367; and Reade v. Livingston, 3 Johns. Ch. 481, and authorities cited. If we are right in this position, then the bill of the complainant must be dismissed. As a femme covert she can only be entertained when suing separate from her husband, to enforce or protect an existing separate right or interest. As to the objection that the husband has never been seized, the control by the guardian of the estate, and receipt by him in his official character of rents, constituted a sufficient legal entry to invest the wards with actual seizin, if such seizin were necessary to confer upon the husband an interest liable for his debts (which however is denied). And upon the marriage, the authority of Gideon as guardian, so far as the complainant's rights and interests were concerned, ceased. And the same seizin and all were by operation of law transferred to and vested in the husband, and he could by no mere parol agreement, divest himself thereof. It is not very distinctly perceived, however, in what manner the question of the husband's seizin can affect the rights of the creditors, pending the lives of the husband

and wife. If the wife were dead, a question might arise as between the husband and the heirs as to his title as tenant by the courtesy which might possibly be affected by the character or fact of his seizin during the coverture, but whilst the wife is living, unless she be entitled to a sole and separate estate, she can without the union of her husband bring no suit in relation to her property rights or interests, either real or personal, legal or equitable. So that if her claim to a separate estate be without foundation, she cannot be entertained in a court of equity upon either of the grounds alleged in the bill. If she have no right to a separate estate, her husband during the coverture is entitled to all her rights and interests, legal and equitable. If by reason of want of seizin on his part, or for any other reason, his interests in his wife's estate are not legally subject to execution or sale, or if irregularities in the management of the process of execution are likely to effect a sacrifice, if the wife have no sole and separate estate, the husband singly or in conjunction with his wife can alone interpose by suit, either at law or in equity, for redress or protection.

J. M. Carlisle, for complainant.

THE COURT by its decree dismissed the bill with costs, and dissolved the injunction.

## Case No. 8,868.

### McKNIGHT v. RAMSAY.

[1 Cranch, C. C. 40.] [1]

Circuit Court, District of Columbia. Oct. Term, 1801.

COURTS — JURISDICTIONAL AMOUNT — OFFSET—ARREST OF JUDGMENT.

In an action of debt for an amount large enough to support the jurisdiction of this court, it is no cause for arrest of judgment that the sum due is reduced by offsets to a sum for which the court would not have had original jurisdiction.

[Cited in Hellrigle v. Dulaney, Case No. 6,343.]

Debt. Verdict for the debt in the declaration mentioned to be discharged on payment of £3. 11s.—the plaintiff's demand being reduced to that sum by offsets.

Motion by Mr. Taylor, for defendant, for nonsuit; the sum being less than twenty dollars, and so not within the jurisdiction of this court.

Mr. Swann, for plaintiff, cited Gross v. Fisher, 3 Wils. 49.

Nonsuit refused.

McKNIGHT (SEMMES v.). See Case No. 12,653.

McKNIGHT (SHINN v.). See Case No. 12,789.

---

[1] [Reported by Hon. William Cranch, Chief Judge.]

McKNIGHT (UNITED STATES v.). See Case No. 15,695.

MACKOY (UNITED STATES v.). See Case No. 15,696.

McLAIN (McCULLOCH v.). See Case No. 8,739.

---

## Case No. 8,868a.

### McLAIN v. RUTHERFORD.

[Hempst. 47.] [1]

Superior Court, Territory of Arkansas. April, 1827.

NOTES — DAYS OF GRACE — MAKER—PLEADING AT LAW—NOL PROS OF COUNT—ASSESSMENT OF DAMAGES—SUM CERTAIN—JURY.

1. The custom of merchants as to days of grace does not apply as between the maker and payee.

2. A plaintiff may enter a nolle prosequi to any count in his declaration.

3. When the sum is certain, or may be reduced to a certainty by computation, the intervention of a jury to assess damages is unnecessary.

Appeal from Pulaski circuit court.

[This was a suit by John McLain against Samuel M. Rutherford.]

Before JOHNSON, ESKRIDGE, and TRIMBLE, JJ.

OPINION OF THE COURT. Among the numerous points relied upon by the counsel to reverse the judgment of the court below, we deem it necessary only to notice two. First, it is contended that according to the custom of merchants the defendant was entitled to "days of grace," and consequently the action was brought before the instrument, upon which it was founded, became due. We are of opinion that the custom of merchants is not applicable to this case. From an examination of the instrument upon which the action was brought, it will be seen that it is merely a simple duebill, payable to the plaintiff himself, and not to him "or order." It is not negotiable, nor can it be transferred, unless by assignment, under the statute. But, had the note in this case been, from its phraseology, negotiable, even then, unless it had been actually transferred, the custom of merchants allowing days of grace would not apply. The custom of merchants does not apply to the immediate parties to the transaction, or, in other words, to the maker and payee. While a promissory note continues in its original form of a promise from one man to pay another, it bears no similitude to a bill of exchange. The resemblance begins from the first indorsement, and when once indorsed, the law relative to bills of exchange applies.

The second point we have thought worthy of notice is, that "the plaintiff had no right to enter a nolle prosequi on the second count, and take final judgment on the first." We are most clearly of opinion that the plaintiff,

---

[1] [Reported by Samuel H. Hempstead, Esq.]